## CLARKE v. UNITED STATES.
### No. 17064.

District Court, E. D. Pennsylvania.
May 31, 1933.

Ernest Scott, of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and Edward W. Wells, U. S. Atty., both of Philadelphia, Pa., and Percia E. Miller, Asst. Counsel, Bureau of Internal Revenue, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, both of Washington, D. C., for the United States.

Sur Trial Hearing on Waiver of Jury on Pleadings and Proofs.

DICKINSON, District Judge.

The clerk's office will please see that a waiver of jury trial has been made in writing and is filed of record.

#### The Issue.

A tax, levied against the estate of plaintiff's decedent, was paid under protest, and its return demanded and refused, and this action brought. The sole issue is whether certain shares of stock at one time in the name of plaintiff's decedent were assigned by the then owner in contemplation of her death.

#### Fact Statement and Discussion.

James H. Clarke was the owner and operator of a textile mill. As has come to be usual, he had the business incorporated under the name of the Orinoka Mills. The certificates of stock (except a few shares held for organization purposes) were issued to him. Later on he assigned some of the shares to his wife, the decedent in the present case. Subsequently she received more shares through a stock dividend. The stock was appraised, for tax purposes, at its supposed value, in 1928. What its value was a short time afterwards does not affect the question before us, although it has doubtless empha-

sized the demand for the return of the tax paid. Mrs. Clarke, in 1927 or later (within two years of her death), transferred this stock to her son, A. Vinton Clarke. It was, however, included in her estate because of the fact finding by the collector that this transfer was made in contemplation of death. The sole question is this question of fact. The relations of the father to the son were what they usually are in such cases. The son was always a boy to the father. There was the very common vague hope on the part of the father that some time the son might become old enough to assume the responsible management of the mills. As long as the father, however, was in the active management, that time had not arrived. In September, 1927, the father suffered a so-called "stroke," and was thereafter incapacitated. From that time the son took full charge. The stock which had been assigned to the mother, we find as a fact, was in her mind held by her in trust for the son to go to him whenever he succeeded to the management of the business. She accordingly so assigned it. There was no thought of estate distribution and no thought of death which supplied the motive for any of these transfers. We are not ready to say that the real motive of the father in transferring this stock to his wife was not to reduce his income taxes by reducing his income by making part of it taxable to the wife. We are confident, however, that "contemplation of death" had no part in his motive and it makes no difference here whether it did or not. We are equally sure that such thought did not prompt the transfer by the mother to the son. One reason for thinking so is that she had a daughter. The stock had at that time a very substantial value, and if she had been distributing her estate in anticipation of her death she would not have ignored the daughter. This would in itself make clear that she had some other motive than that of dividing up what she had in anticipation or contemplation even of her death. What prompted the transfer was that she felt that she held the stock to be transferred to the son whenever he became the responsible manager of the mills. That the transfer was made when he assumed this responsibility puts the stamp of verity upon this motive. The purpose of the act of Congress is clear. The payment of an estate tax may be evaded by a distribution made before death. The tax is not imposed upon transfers made, but only upon transfers made as a substitute for the distribution of a decedent's estate.

This disposes of the only question submitted to us, and a formal judgment may be entered in accordance herewith.

The formal requests for findings of fact and conclusions of law submitted to us by the plaintiff are all found as requested.

As in trials on waiver of a jury, there is a question of whether exceptions should be allowed, we now allow an exception to defendant.

### Findings of Fact.

1. Plaintiff, A. Vinton Clarke, is the only son of Mary Jane Clarke and James H. Clarke; both parents being now deceased.

2. Plaintiff and Bessie Clarke (now Bessie C. Arthur) were and are the only children born to said parents.

3. Plaintiff is executor under the will of his mother, Mary Jane Clarke, a resident of Philadelphia, who died testate in Philadelphia county, commonwealth of Pennsylvania, on June 7, 1928.

4. Plaintiff administered said decedent's estate as such executor and is still acting as executor, never having been discharged by the orphans' court of Philadelphia county under the authority of which court he acted.

5. The Orinoka Mills is a corporation organized and existing under the laws of the state of New York. Said corporation is in the business of manufacturing textiles and tapestries. Said corporation was organized and incorporated by plaintiff's father, James H. Clarke, and associates in 1885.

6. Over one-third of the stock of said corporation has been held by said James H. Clarke, his wife, Mary Jane Clarke, and/or his son, A. Vinton Clarke, since the beginning of the business.

7. In or about December, 1921, the said James H. Clarke transferred and delivered 451 shares of common stock of Orinoka Mills to his wife, Mary Jane Clarke, on the family understanding that when their son, A. Vinton Clarke, took over the active management of the Orinoka Mills, said stock should be transferred to said A. Vinton Clarke.

8. Said family understanding was known to all members of the family and well understood by each of them.

9. In the recapitalization of the Orinoka Mills on November 15, 1922, 902 additional shares of common stock and 451 shares of preferred stock were acquired by Mary Jane Clarke as stock dividends on the said family understanding under which she received the first shares.

10. During the early part of 1927 said James H. Clarke was taken ill and forced to retire temporarily from managing the Orinoka Mills.

11. In or about September, 1927, said James H. Clarke suffered a stroke and never thereafter was able to resume management and control of the Orinoka Mills. As a result thereof, plaintiff, A. Vinton Clarke, in September, 1927, took over the permanent active management of said mill.

12. In or about December, 1927, or January, 1928, Mary Jane Clarke transferred and delivered 1,353 shares of common stock and 451 shares of preferred stock of Orinoka Mills to her son, A. Vinton Clarke, in pursuance of the aforementioned long-standing family arrangement. The transfer of said 1,353 shares of common stock and 451 shares of preferred stock of Orinoka Mills by said Mary Jane Clarke to plaintiff was not made in contemplation of death but in pursuance of the aforesaid family arrangement.

13. In January of 1928, the physical condition of Mary Jane Clarke was practically no different from what it had been in preceding years, nor was it a serious condition.

14. Mary Jane Clarke died June 7, 1928, at the age of 68 years; her death resulting from various afflictions from which she had been suffering for more than ten years.

15. On March 1, 1929, plaintiff, as executor, made a return for the purpose of federal estate tax on the estate of Mary Jane Clarke to the then collector of internal revenue for the First collection district of Pennsylvania. In said return, plaintiff, as executor, alleged that the aforementioned shares of stock of Orinoka Mills were not transferred to plaintiff by decedent in contemplation of death.

16. The value of the said Orinoka Mills shares transferred to plaintiff in December, 1927, or January, 1928, constituted nearly the entire estate of the said Mary Jane Clarke. The gross estate of the said Mary Jane Clarke was determined to be $525,599.-82; of this amount the value of the transferred stock was fixed at $518,650, and the value of other assets $6,949.82.

17. On March 21, 1929, plaintiff paid to the collector of internal revenue, federal estate tax in the amount of $9,161.24.

18. Subsequently a deficiency assessment was made and a further tax of $4,460.35 was paid by the plaintiff to the collector on March 31, 1930.

19. On April 6, 1932, plaintiff filed, in duplicate, with the then collector of internal revenue for the First collection district of Pennsylvania, a claim for refund of the entire tax paid as above, together with interest from the dates of payment.

20. On June 11, 1932, J. S. McLaughlin, collector of internal revenue for the First collection district of Pennsylvania, died.

21. On June 24, 1932, plaintiff was notified that his claim for refund was rejected

22. This suit by the plaintiff against the United States of America under the Tucker Act was commenced in the District Court for the Eastern District of Pennsylvania on the 12th day of August, 1932.

### Conclusions of Law.

1. Under the Tucker Act (28 USCA § 41 (20), the District Court has jurisdiction of this cause, the parties, and the subject-matter.

2. The statute of limitations runs from the date of payment of the last installment of tax; hence this action was commenced within the three-year limitation period provided by statute.

3. The transfer of stock to Mary Jane Clarke by James H. Clarke on the understanding that said stock should be retransferred to A. Vinton Clarke when he took over the management of the Orinoka Mills vested an absolute estate for a term in said Mary Jane Clarke, with remainder to her son contingent upon the date of his assumption of the management of the Orinoka Mills.

4. Said family understanding was clearly proved by competent uncontradicted testimony and constituted a valid agreement between the parties.

5. The contemplated contingency having occurred, the estate of Mary Jane Clarke in the Orinoka Mills stock terminated and transfer of said stock by her to A. Vinton Clarke constituted a performance of the family arrangement under which she had received said stock from her husband.

6. Plaintiff's uncontradicted evidence established the family arrangement whereby plaintiff was to receive the Orinoka Mills stock from his mother when he took over the management of the Orinoka Mills, and such uncontradicted evidence rebutted any alleged statutory presumption that the transfer of the stock to plaintiff was made in contemplation of death.

7. The transfer of the 1,353 shares of common stock and 451 shares of preferred stock of the Orinoka Mills by Mary Jane Clarke to A. Vinton Clarke was proved not to be a gift in contemplation of death.

8. The United States of America, defendant herein, must repay to the plaintiff, as executor of the estate of Mary Jane Clarke, the full amount of the tax paid ($13,621.59), with interest on $9,161.24 from March 21, 1929, and on $4,460.35 from March 31, 1930.